**Ramon Ricardo PINA, Petitioner,**

v.

**Robert HENDERSON, Superintendent of Auburn Correctional Facility, Respondent.**

**No. 81 Civ. 626.**

United States District Court, E.D. New York.

May 22, 1984.

Gersten, Savage & Kaplowitz by Richard B. Lind, New York City, for petitioner.

Robert Abrams, Atty. Gen. of State of N.Y. by Joyce Andren, Asst. Atty. Gen., New York City, for respondent.

## MEMORANDUM and ORDER

WEINSTEIN, Chief Judge.

The problem posed by this habeas corpus petition is whether inefficiency of the state's police-prosecutorial forces in bringing to defense counsel's attention a codefendant's admission that he alone was responsible for the crime is excusable under the Constitution. Given the circumstances of this case it is not.

Petitioner seeks to vacate his New York State conviction on the grounds of ineffective assistance of counsel and failure of the State to turn over exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The claims of inadequate assistance of counsel are without merit, but because the

court finds that the State had a duty to provide the defense with the evidence and because the evidence creates a reasonable doubt as to petitioner's guilt, the writ is granted.

### I. Procedural History

Petitioner's *pro se* application for a writ of habeas corpus was filed in March of 1981. A prior application challenging the same conviction on different grounds had been denied some years before. *See* Memorandum and Order, 78 C 2701, February 7, 1979. His new contentions raised a *Brady* claim based upon the alleged failure of the state to reveal exculpatory evidence. Counsel was appointed and this court held an evidentiary hearing in December 1981.

During the course of the hearing, an issue of ineffective assistance of state trial counsel arose which was factually inextricably linked to the *Brady* contention. Instead of dismissing the writ pursuant to *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), it was stipulated that petitioner would return to the state courts to exhaust his ineffective assistance of counsel claim. Toward that end petitioner, through counsel, moved to vacate the judgment of conviction pursuant to N.Y.C. P.L. § 440.10 before the Supreme Court of the State of New York, Queens County. His petition contained, *inter alia*, the minutes of the December 1981 hearing held before this court. Respondent opposed the application.

In a decision dated October 20, 1982 (*Agresta*, J.), petitioner's motion was denied. The New York court found that trial counsel "appear[ed] to have provided meaningful and conscientious representation" and that there were "no lawful grounds" to support the claim of ineffective assistance of counsel. This decision was appealed to the Appellate Division, Second Judicial Department, and in October 1983 was unanimously affirmed without opinion. In January 1984, leave to appeal to the New York Court of Appeals was denied (*Wachtler*, J.).

In February 1984, all the parties appeared again before this court. They agreed that petitioner had exhausted his available state remedies. The petition was deemed amended to reflect the Sixth Amendment issue and both parties waived any further hearings.

### II. Facts

██ Petitioner was arrested after police stopped a car driven by his codefendant in which he was the passenger. The car had been stolen and contained burglar's tools in the trunk. Petitioner denied knowing that the car had been stolen. His probation officer's report indicated that the codefendant confirmed petitioner's claim of lack of knowledge. That report written shortly after the arrest reads in part as follows:

> The co-defendant, Edward Abru[sic] age 23 according to the arresting officer has no prior record. A check of the Division of Parole File doesn't reveal that he is known to us either. On 9/5/73, the writer also briefly interviewed Mr. Abru who acknowledged that he and he alone stole the car and also absolved the subject of any knowledge of the vehicle theft.

> It should be noted that Officer Vietl had advised the writer prior to the discussion with the co-defendant that Abru appeared to be quite fearful of the subject and that he most probably would take all the "Weight" of the arrest.

Some of the police records are not now available. Based on judicial notice of New York City practice, the court finds that a similar memorandum was made by the police officer. *See* Federal Rules of Evidence, Rule 201. The State could have called the officer to testify in this court but chose not to do so.

Testimony at the hearing in this court as well as surrounding circumstances prove that petitioner knew of his codefendant's admissions and intention to take the "Weight" of the prosecution. In fact, petitioner was present and overheard at least one of the codefendant's admissions shortly after the arrest.

The court finds that counsel for the defendant did not know of the exculpatory statement before sentence in March of 1974. On this point, the evidence is conflicting. For example, in a letter dated January 22, 1975 to the Albany Law School

Legal Assistance Project trial counsel states flatly that he "was informed of Abreu's, [the codefendants] exculpatory statement before trial." Yet, the court finds nothing in the contemporaneous notes of counsel to support this statement. *See also* transcript of December 8, 1981 at p. 34. After the trial, counsel clearly was aware of the statement as reflected in his letter to petitioner of April 26, 1974. At the time of the trial defense counsel was experienced and able, having served as an Assistant District Attorney as well as private defense counsel. He appeared credible to the court when, after reviewing the records, he said he could not now recall when he learned of the admissions. The court, on the basis of the record and its observation of the witness, finds that defense counsel did not know of the statement until after the trial. *See id.* at 36–45. This conclusion is predicated in large measure on the unlikely chance that so able an attorney would have ignored this important item of evidence. *See id.* at 46–49. If the court is incorrect in this conclusion (*see id.* at 49–50 where the court suggests a contrary finding), then petitioner's Sixth Amendment argument would, of course, be greatly strengthened. *See also id.* at 56, 61, where the former Assistant District Attorney who prosecuted the case suggests that the District Attorney's office had a lenient policy towards passengers who, like petitioner, were exonerated by the driver of a stolen vehicle.

Petitioner went to trial. Despite his criminal record he testified on his own behalf. Apparently at the time of trial, his codefendant was in a mental institution; he was not called as a witness. The jury found petitioner guilty of criminal possession of stolen property in the first degree (N.Y. Penal Law § 165.50), a felony, and unauthorized use of a motor vehicle (N.Y. Penal Law § 165.05) and possession of burglar's tools (N.Y. Penal Law 140.35), both Class A misdemeanors. He was sentenced in March 1974 to concurrent terms of zero to four years on the criminal possession count and one year on the remaining two counts. The Appellate Division reversed the conviction for possession of burglar's tools. After pleading guilty in 1978 to a subsequent charge of burglary, petitioner was sentenced with the conviction he is challenging now being considered a "predicate felony."

### III. Law

#### A. *Competent Assistance of Counsel*

■ The standard to be followed now in this circuit in judging trial counsel's performance is the "reasonably competent assistance" standard, comparable to the "meaningful representation" standard applied by the state courts in the case at bar. *Trapnell v. United States*, 725 F.2d 149, 155 (2d Cir.1983); *People v. Baldi*, 54 N.Y.2d 137, 147, 444 N.Y.S.2d 893, 898, 429 N.E.2d 400 (1981). A similar standard has just been adopted by the Supreme court. *Stickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). Under any of the above standards, petitioner's Sixth Amendment rights were not violated.

■ The factual findings of the state court based on a hearing on the merits and evidenced by a written opinion by Justice Agresta enjoy a presumption of correctness. *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Cruz v. Alexander*, 708 F.2d 31, 36 (2d Cir.1983). The mixed legal-factual question of whether petitioner received adequate assistance of counsel, however, is for the federal court to make on a habeas corpus petition. *See Cuyler v. Sullivan*, 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980). On the basis of its evaluation of the record the court agrees with the state court that the petitioner received competent representation. *See also Pina v. LeFevre*, 78 C 2701, Memorandum and Order (E.D.N.Y., Feb. 7, 1979).

#### B. *Failure to Reveal Critical Evidence to Defense Counsel*

This brings us to the *Brady* problem first posed by petitioner. As to that issue,

there was a violation of due process requiring granting of the writ.

As already noted, petitioner's codefendant told the arresting officer that he and not petitioner was responsible for stealing the car both were accused of having illegally obtained. The arresting officer told this to petitioner's probation officer, who confirmed the information. Neither of these state law enforcement officers told the prosecutor about this important evidence of petitioner's innocence. Petitioner was aware of the fact that the codefendant had made a statement exculpating petitioner, but he failed to tell this to his counsel.

■ Information known to the police or to the state probation service should be treated as information known to the prosecutor. The inefficiency of the state prosecutorial forces should not be permitted to keep critical evidence from defense counsel. A prosecutor can at least rethink the case and redirect the inquiry if the evidence against a defendant is ambiguous. If he is unaware of the evidence, the possibility of a miscarriage of justice is enhanced. Should the prosecutor fail to act then *Brady* permits defense counsel to take appropriate steps.

Exculpatory evidence of the kind involved here is particularly important both to defense counsel and to the prosecutor. One of the greatest dangers of convicting the innocent arises from police focusing on the wrong person and then ignoring exculpatory evidence and leads. *See* E.M. Borchard, Convicting the Innocent, xv (1961), pointing out that "[i]n a very considerable number [of miscarriages of justice] ... the gross negligence of the police in overlooking or even suppressing evidence of innocence ... was the operative factor in causing the erroneous conviction."

The Second Circuit rule is that information in the hands of someone who can be viewed as "the arm of the prosecutor" triggers the application of the *Brady* requirement of disclosure. *United States v. Morell,* 524 F.2d 550, 555 (2d Cir.1975); *Wedra v. Thomas,* 671 F.2d 713, 717 n. 1 (2d Cir.), *cert. denied,* 458 U.S. 1109, 102 S.Ct. 3491, 73 L.Ed.2d 1372 (1982). In *Morell*

the DEA agent who had participated in the investigation of the defendant and had sat at counsel table during trial failed to inform the United States Attorney or the defendant's counsel of a confidential file he had on the government's key witness. The Second Circuit remanded the case to the district court to determine whether the failure to disclose was deliberate. If it was, the court ordered a new trial.

*Morell's* emphasis on the distinction between negligence and willfulness of the government in not disclosing information is no longer the law. In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court held that the "constitutional obligation [to reveal information] is [not] measured by the moral culpability or the willfulness, of the prosecutor." *Id.* 427 U.S. at 110, 96 S.Ct. at 2400. The Court emphasized the nature of the evidence suppressed rather than the way in which it was done. Courts were instructed to concern themselves with the guilt-innocence issue rather than the punishment or deterrence of the prosecutor issue, noting that "[i]f the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor." *Id.* 427 U.S. at 111, 96 S.Ct. at 2401. In the only Second Circuit case relying on *Morell* since *Agurs,* the court stated in a footnote that "the knowledge of a police officer may be attributable to the prosecutor if the officer acted as an arm of the prosecution." *Wedra v. Thomas,* 671 F.2d 713, 717 n. 1. The court did not reexamine *Morell* in light of *Agurs* and the statement was dicta since the habeas petition was denied for failure to exhaust and the court also found the failure to disclose not prejudicial.

Other circuits that have examined the issue have held that information in the hands of the police and other state officers is subject to the *Brady* requirement regardless of prosecutorial knowledge and without explicitly imposing any requirement that the state officer be an arm of the prosecution. *See, e.g., Fulford v. Maggio,* 692 F.2d 354, 358 n. 2 (5th Cir.1980), *rev'd on other grounds,* 462 U.S. 111, 103 S.Ct.

2261, 76 L.Ed.2d 794 (1983) ("The State's duty of disclosure is imposed not only upon its prosecutor, but also on the State as a whole, including its investigative agencies."); *Freeman v. Georgia,* 599 F.2d 65, 69 (5th Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980) ("We feel that when an investigatory police officer willfully and intentionally conceals material information, regardless of his motivation and the otherwise proper conduct of the state attorney, the policeman's conduct must be imputed to the state as a part of the prosecution team."); *United States v. Butler,* 567 F.2d 885, 891 (9th Cir.1978) (the taint on the criminal trial is the same when government agents fail to reveal promises of immunity made to government witness as when prosecutor knew of and failed to reveal information); *United States v. Bryant,* 439 F.2d 642, 650 (D.C. Cir.1971) (prosecution includes investigation by Bureau of Narcotics and Dangerous Drugs and disclosure of information held by it is required under *Brady*); *Barbee v. Warden,* 331 F.2d 842, 846 (4th Cir.1964) (since police are a part of the prosecution the duty to disclose exculpatory evidence extends to them). *Cf. United States v. Escobar,* 674 F.2d 469, 479 (5th Cir.1982) ("The *Brady* rule does not require the [federal] prosecution to search the files of a state police office for exculpatory evidence.").

■ Even if the Second Circuit's arm of the prosecution requirement is still good law, the police officer did testify in Pina's trial and was the investigating officer. He qualifies as an arm of the prosecution and his information must be attributed to the prosecutor.

■ Since the parole officer and the police officer consulted with each other about the admissions, the police officer's duty to disclose that fact as well to the prosecutor seems apparent. The probation officer's knowledge and notes must also be attributed to the prosecutor. *Cf. Minnesota v. Murphy,* —— U.S. ——, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (*Miranda* warnings are not required when a parole officer questions someone during a meeting that is required as a part of probation, and not held in a custodial setting).

■ The fact that defense counsel made no request for exculpatory documents is irrelevant. *See United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The Court in *Agurs* pointed out that there does not have to be a specific request for information for the *Brady* requirement to apply. *Id.* at 107, 96 S.Ct. at 2399.

As to the effect of Pina's knowledge of the oral exculpatory evidence—but not the written report—the Second Circuit has held that "[e]vidence is not 'suppressed' if the defendant either knew or should have known of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. LeRoy,* 687 F.2d 610, 618 (2d Cir.1982) (citations omitted), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983). In the *LeRoy* case the court held that the defendant "clearly was on notice of the facts necessary for him to take advantage" of the possibly exculpatory testimony a possible witness might furnish. *Id.* at 619.

*LeRoy* is not applicable in the instant case. Although Pina probably knew that his codefendant had implicated only himself, he could not have known that both the police officer and the parole officer had made a written record. A recent Second Circuit case is similar to the *Pina* case on this issue. In *United States v. Torres,* 719 F.2d 549 (2d Cir.1983), the purported *Brady* material was an FBI report listing a different individual's name than the defendant's as being picked up and questioned for the robbery for which the defendant had been convicted. Although the defendant's lawyer knew about his client's claim that he had been apprehended in the area of the robbery and not identified by eyewitnesses (as was the person mentioned in the report), the Second Circuit questioned whether this was enough notice of "essential facts permitting him to take advantage" of exculpatory evidence. 719 F.2d at 555 (quoting *LeRoy*). The court noted that without the report counsel had

only the alternative of presenting his client's somewhat unbelievable story by putting him on the stand and exposing his conviction record to the jury. Similarly, in this case, with just the information that the codefendant had admitted his sole responsibility to Pina, without the corroboration of a report, the evidence probably would have done Pina little good.

The *Torres* court remanded the case to the district court for supplementation of the record because it could not tell whether the FBI report actually exculpated the defendant. A new trial is required "if the omitted evidence creates a reasonable doubt that did not otherwise exist." *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976). Here there is no doubt of the exculpatory nature of the report, and the fact that its availability at trial was enough to have created a reasonable doubt of petitioner's guilt.

Were only the oral admissions involved the writ would not be granted because the petitioner, the hearings before this court demonstrate, was aware that the codefendant was willing to carry the burden of the crime. He did not, the court concludes, reveal this to his counsel. Whether petitioner was motivated, as the State suggests, by the fact that petitioner had himself coerced the codefendant or by the fact that he knew of the codefendant's mental instability or by the fact that he was convinced of his own guilt is both unclear and irrelevant. The defendant has some obligation to assist in his own defense. He cannot sit by and seek a new trial on evidence available to him at the time of the original prosecution.

The problem presented by the official written indications of innocence raise a much more persuasive ground for granting the writ. In the first place, there is a strong indication that the prosecutor would have recommended dismissal as to the petitioner and that his recommendation would have been followed had the police and probation officer revealed their reports. In the second place, defense counsel could have presented the exculpatory material to the jury either on cross-examination of the police officer, who did testify, or as part of the defense case as an exculpatory admission of a non-available witness. In either case, petitioner might well have chosen not to take the stand. Under any of these alternatives, the possibility of a verdict of not guilty would have been appreciably enhanced.

■ *People v. Brown*, 26 N.Y.2d 88, 308 N.Y.S.2d 825, 257 N.E.2d 16 (1970), was a widely discussed opinion known to every alert member of the New York bar in 1974 when petitioner was tried. It adopted a rule embodied in Federal Rules of Evidence, Rule 804(b)(3) that a declaration against penal interest is admissible. *See also* Comments of Advisory Committee to Proposed Code of Evidence for the State of New York, § 804(b)(4) (1982). There is this little doubt that the codefendant's admission that he, and not the petitioner, was guilty would have been admitted. The requirement that there be independent evidence to indicate that the statement is trustworthy, *see People v. Settles*, 46 N.Y.2d 154, 167–70, 412 N.Y.S.2d 874, 882–84, 385 N.E.2d 612 (1978); Proposed Code of Evidence for the State of New York, § 804(b)(4); Fed.R.Evid. 804(b)(3), was more than met by the fact that the codefendant was arrested as the driver of the car. *See People v. Settles*, 46 N.Y.2d 154, 169–70, 412 N.Y.S.2d 874, 884, 385 N.E.2d 612.

In addition, the reports themselves would have been admissible. New York was one of the first states to adopt a business entry statute. *See Johnson v. Lutz*, 253 N.Y. 124, 170 N.E. 517 (1930). In a series of increasingly liberal decisions, the New York courts have expanded its application to make official records of almost all kinds available as proof at trials. *See, e.g., Matter of Leon RR*, 48 N.Y.2d 117, 122–23, 421 N.Y.S.2d 863, 866–67, 397 N.E.2d 374 (1979) (social workers' records). *See also* Comments of Advisory Committee to Proposed Code of Evidence for the State of New York, §§ 803(c)(5) (business records), 803(c)(7) (public records and reports).

■ Chief Judge Fuld had clearly sounded the call for free admissibility of documents such as these when he wrote in a slightly different context for the unanimous Court of Appeals, "Procedural rules are best calculated to serve justice if they permit admission of [hearsay] testimony." *Fleury v. Edwards*, 14 N.Y.2d 334, 340, 251 N.Y.S.2d 647, 652, 200 N.E.2d 550 (1964). To these state rules we must add the strong claim a defendant has for admissibility of exculpatory evidence on due process grounds. *See Chambers v. Missippi*, 410 U.S. 284, 298–304, 93 S.Ct. 1038, 1047–1049, 35 L.Ed.2d 297 (1978). There is little doubt that the oral admissions of the codefendant exonerating petitioner were admissible. Even more critical, the written contemporaneous records of these exculpatory remarks on the police officer's and the probation officer's notes would have been admitted as evidence-in-chief: *Cf. United States v. Harris*, 733 F.2d 994 (2nd Cir. 1984).

For the purpose of this discussion, we can assume—what this court finds as a fact—that the petitioner, but not his lawyer, knew of the codefendant's oral admission. What is clear beyond a reasonable doubt is that neither of them knew of the contemporaneous written record. In a federal criminal trial they would have known of these documents since the invariable practice is to turn such writings over to the defendant under the Jencks Act. 18 U.S.C. § 3500; Fed.R.Crim.P. 26.2. Had defense counsel as experienced as petitioner's had any hint of the existence of these documents, he would have requested them, been granted them under *Brady*, and put them before the jury.

What would the result of the introduction of the documents have been? Here the court must rely on its experience with juries and trial tactics. Based on such experience, the conclusion must be that the jury would have found a reasonable doubt of guilt and acquitted. Paradoxically, the jury probably would have given greater weight to these contemporary official records of the codefendant's statement that he alone was guilty then it would have given to a statement to that effect of the codefendant on the witness stand or to testimony by the state officials that they heard the statements shortly after the crime.

The paradox is resolved on two grounds. First, is the well-known preference of triers for contemporaneous documents that avoid the risks of changes over time in memory and motive. Second, is the fact that documentary hearsay is not subject to cross-examination and attack so that in a situation like the present one it is often given more probative force than non-hearsay testimony from the witness stand. Third, the redacted documents, unlike testimony, would have gone into the witness room as exhibits and continued to whisper "innocent" during the jury's deliberations.

## IV. Conclusion

It should be emphasized that no evil-doing on the part of the policeman, probation officer or prosecutor is suggested. They were only less efficient than they should have been. But in this case, where efficiency would have almost certainly meant acquittal rather than conviction, the conviction cannot stand. The writ is granted and the conviction now challenged set aside.

Appointed attorney for the petitioner, Richard B. Lind, has done an extraordinarily fine job in gathering the necessary materials and in briefing and arguing the case. He should apply for compensation under the Criminal Justice Act for a sum reflective of the substantial time and skill devoted to the petitioner's claims.

This judgment is stayed for sixty days to permit an appeal.

SO ORDERED.