**Ramon Ricardo PINA, Petitioner-Appellee,**

v.

**Robert HENDERSON, Superintendent of Auburn Correctional Facility, Respondent-Appellant.**

**No. 361, Docket 84–2196.**

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1984.

Decided Jan. 4, 1985.

**48**

Douglas D. Aronin, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., State of N.Y., and Vida M. Alvy, Asst. Atty. Gen., New York City, of counsel), for respondent-appellant.

Richard B. Lind, New York City, for petitioner-appellee.

Before VAN GRAAFEILAND, PIERCE and PRATT, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York (Weinstein, *C.J.*) 586 F.Supp. 1452, granting appellee's petition for a writ of habeas corpus and setting aside his State court conviction. The issue on appeal is whether the State prosecutor violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding exculpatory evidence from petitioner. Concluding that he did not, we reverse.

Petitioner and Eduardo Abreu were arrested on August 27, 1973 after police succeeded in stopping a stolen car in which they were riding. It is undisputed that Abreu was the driver. On September 5, 1973 petitioner, who previously had been convicted of grand larceny, was interviewed in a detention cell at the Queens County Courthouse by his parole officer, Robert Kaplan. Petitioner denied any involvement in the theft. Moreover, although the car's ignition had been removed leaving a hole and dangling wires, petitioner claimed that he was unaware that the car had been stolen until Abreu began speeding away from the police.

Kaplan also questioned Abreu, who was being held in the same cell, although Kaplan had no duty to do so since Abreu had no prior record. Abreu told the parole officer that "he and he alone stole the car", and absolved petitioner of any knowledge of the theft. Kaplan's notes of these interviews and a statement he took from Richard Dietl, one of the arresting officers, were incorporated in Kaplan's parole violation report. The report also noted Officer

Dietl's observation that Abreu appeared "quite fearful" of petitioner and would probably "take all the 'weight' of the arrest."

Petitioner was tried alone and convicted of criminal possession of stolen property, unauthorized use of a motor vehicle and possession of burglar's tools. The Appellate Division reversed the conviction for possession of burglar's tools but otherwise affirmed. 50 A.D.2d 804, 375 N.Y.S.2d 853 (2d Dep't 1975). Although petitioner testified, he made no mention of the conversation between Abreu and Kaplan that had taken place in his presence. Moreover, he called neither Abreu nor Kaplan as a witness. Petitioner now contends, however, and the district court agreed, 586 F.Supp. 1452, that his conviction must be reversed because the prosecutor did not disclose that written reports of Abreu's admission had been prepared by Parole Officer Kaplan and, supposedly, also by Patrolman Dietl.

Although the district court found that petitioner knew that Abreu had given Kaplan the exculpatory statement, 586 F.Supp. at 1454, it found that petitioner could not have known that Kaplan had made a written report of the conversation. Concluding that the written report would have carried greater weight than would oral testimony by Kaplan and Abreu, a questionable conclusion at best, *see United States v. Pabian*, 704 F.2d 1533, 1537–38 and n. 2 (11th Cir.1983), the district court held that the State's failure to disclose the report violated petitioner's due process rights. The district court applied the same reasoning to a report supposedly prepared by Patrolman Dietl, after taking judicial notice of "New York City practice" and concluding, not only that Dietl prepared a report, but also that Abreu's statement was incorporated in it.

■ Looking first to Kaplan's parole violation report, the initial question that must be answered is whether the prosecutor had a *Brady* obligation to disclose it. The State contends that, since the district attorney's office had neither knowledge nor possession of the report, it cannot be charged with a *Brady* violation. The district court held, however, that Parole Officer Kaplan's knowledge must be imputed to the prosecutor. 586 F.Supp. at 1456.

In so holding, the district court apparently overlooked substantial Second Circuit authority to the contrary. In *United States v. Stassi*, 544 F.2d 579, 582 (2d Cir.1976), *cert. denied*, 430 U.S. 907, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977), the negligence of the Parole Board in permitting the pretrial parole and deportation of a coconspirator was not imputed to the prosecution. In *United States v. Stofsky*, 527 F.2d 237, 244 n. 7 (2d Cir.1975), *cert. denied*, 429 U.S. 819, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976), we refused to impute to the prosecution knowledge of information contained in a Government witness's tax return on file with the Internal Revenue Service. In *United States v. Quinn*, 445 F.2d 940, 943–44 (2d Cir.), *cert. denied*, 404 U.S. 850, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971), we refused to charge the United States Attorney for the Southern District of New York with knowledge of a Florida sealed indictment charging one of the Government's principal witnesses with participating in a $50 million stock fraud. *See also United States v. Rosner*, 516 F.2d 269, 278–79 n. 4 (2d Cir. 1975), *cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976).

In *United States v. Morell*, 524 F.2d 550 (2d Cir.1975), we held that the prosecutor was obligated to turn over *Brady* material possessed by a DEA agent who had kept a confidential file on an informant, the Government's key witness. Because the agent had supervised the informant, had participated actively in the investigation and sat at the prosecutor's side during all or most of the trial, we deemed it fair to treat him as an "arm of the prosecutor". *Id.* at 555. That descriptive term cannot be applied to Parole Officer Kaplan, who did not work in conjunction with either the police or the prosecutor. *See United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir.), *cert. denied*, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980); *United States v. Trejo-Zambrano*, 582 F.2d 460, 465 (9th

Cir.), *cert. denied,* 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978); *United States v. Trevino,* 556 F.2d 1265, 1270–72 (5th Cir.1977).

■ Although the district court's finding that Patrolman Dietl was acting as an arm of the prosecution was not clearly erroneous, the district court did err in judicially noticing that Officer Dietl had prepared a written report and that this report incorporated Abreu's statement that "he alone" stole the car. Rule 201(b) of the Federal Rules of Evidence permits judicial notice of an adjudicative fact when the fact is:

> one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

This Rule was not meant to expand the use of judicial notice. Instead, it continues "the tradition ... of caution in requiring that the matter be beyond controversy." Advisory Committee Note to Subdivision (b).

■ The more critical an issue is to the ultimate disposition of the case, the less appropriate judicial notice becomes. *Trans World Airlines, Inc. v. Hughes,* 308 F.Supp. 679, 684 (S.D.N.Y.1969), *modified on other grounds,* 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds,* 409 U.S. 363 [93 S.Ct. 647, 34 L.Ed.2d 577] (1973). A court should not go outside the record to supply a fact that is an essential part of a party's case unless the fact is clearly beyond dispute. *United States v. Wilson,* 631 F.2d 118 (9th Cir.1980); *see also Alvary v. United States,* 302 F.2d 790, 794 (2d Cir.1962).

The existence and the content of Dietl's report are not matters beyond dispute. Whether the report was even prepared is not a proper subject of judicial notice. New York City police practice and the extent of individual adherence to it are not so readily determinable by resort to unimpeachable sources as to meet the second test of Rule 201, and they are not so uni-

versally known as to meet the first test. Indeed, the district court emphasized that petitioner "could not have known" that the police officer had made a written record. 586 F.Supp. at 1457. Assuming that a police report was made, there certainly is room for doubt that Abreu's statement would be included in it.

The practical effect of judicial notice under these circumstances was to grant petitioner a presumption that *Brady* material existed, a presumption to which he was not entitled. Its use in this case was particularly pernicious because petitioner knew of Abreu's exculpatory statements and was in a position to take advantage of them. *United States v. LeRoy,* 687 F.2d 610, 618 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983). The most perfunctory interviews with Kaplan and Dietl would have revealed the existence and contents of any reports that were made. Petitioner's failure to make these simple inquiries cannot be blamed on the prosecutor.

The judgment of the district court is reversed, and the district court is directed to dismiss petitioner's habeas corpus application.