William SOTO, Petitioner,

v.

Eugene LEFEVRE, Superintendent of Clinton Correctional Facility, Respondent.

No. 85 Civ. 5075 (CBM).

United States District Court, S.D. New York.

Sept. 2, 1986.

---

The Legal Aid Society, by Lynn W.L. Fahey, William E. Hellerstein, New York City, for petitioner.

Mario Merola, Dist. Atty., Bronx County, by Susan L. Valle, Bronx, N.Y., for respondent.

## OPINION

MOTLEY, Chief Judge.

This case is now before the court on the petition of William Soto for a writ of habeas corpus pursuant to 28 U.S.C. Section 2254. Petitioner alleges that the New York State judgment and sentence which have placed him in respondent's custody are the result of a trial at which he was denied (1) his Fourteenth Amendment right to be convicted only upon proof beyond a reasonable doubt, and (2) his Fourteenth Amendment right to a fundamentally fair trial and to present a defense. Petitioner is currently serving a ten to twenty year sentence for manslaughter in the first degree.

The undisputed facts of the crime for which petitioner was convicted are as follows. On July 3, 1981, at approximately 11:00 P.M., Victor Soto was stabbed to death by two men. (Despite their identical surnames, Victor Soto and petitioner were not related). The stabbing occurred after an altercation between Victor Soto and one of the murderers, Benny Leon, at Mel's Candy Store, a numbers parlor located on 163rd Street in the Bronx. The area in front of the numbers parlor was well lit by street lamps and the light from neon signs. In the course of the altercation, the victim was stabbed by the perpetrators repeatedly in the neck and back. After this initial assault he broke free and stumbled across 163rd Street. The assailants pursued him, however, and continued the assault until their victim collapsed in a pool of blood. The perpetrators then fled.

A witness to the incident, Franscisco Mejia, an auxilliary policeman, happened to be riding past the scene in a bus. Catching sight of the attack, he asked the driver to stop the bus at once. Mejia got off the bus in time to observe the two perpetrators as they finished their attack on Victor Soto and then fled. Mejia hailed a passing pa-

trol car and then helped the police lift the victim into the car. Victor Soto was rushed to Lincoln Hospital where he was pronounced dead on arrival. An autopsy report filed by a deputy medical examiner and introduced into evidence at petitioner's trial confirmed the victim's death by multiple stab wounds.

The ensuing police investigation produced a second eyewitness to the incident besides Mejia. This was Frederick Hazel, a janitor at the numbers parlor who was present when the incident occurred. Hazel testified that after the establishment's proprietor, Benny Leon ("Benny") and the victim began to quarrel, he, Hazel, stepped out for a minute to buy some liquor. As he was returning to the numbers parlor Hazel saw a tatooed man he said he recognized as petitioner approach the place and then join with Benny in attacking Victor Soto, chasing him, and then stabbing him to death. Hazel testified that he knew petitioner from around the neighborhood and referred to him as "tatoo" because of his striking body tatoos.

During his interview with the police, Hazel indentified petitioner from a group of photographs. After this positive identification, and on the strength of Hazel's eyewitness account, petitioner was arrested. At the time of his arrest, petitioner was in possession of a stainless steel folding knife. Hazel subsequently identified the knife as similar to the knives used by the assailants who killed Victor Soto.

Another important witness in the case against petitioner was Pedro Cruz, a cab driver who had picked up Benny Leon a few hours after the murder. During the ride, Benny had boasted to Cruz about the stabbing incident and had made reference to an accomplice in future crimes named Martin. Specifically, the cab driver reported that after telling him about having just stabbed two men and maybe killing one, Benny went on to discuss his plans to kill several other people, including the wife of one of the victims because "she will send someone after me." Benny also told the cab driver that if he were caught his friend Martin would "finish the job." Cruz reported to the police that as the cab drove past 163rd Street where the numbers parlor was located, Benny pointed to the pavement across from Mel's Candy Store and said, "that is where he fell."

At the time of petitioner's trial, Benny had not yet been apprehended. Counsel for petitioner wished to introduce the cab driver's testimony about Benny's conversation, however, for the arguable exculpatory effect of Benny's mention of his cohort, Martin. Although taken literally, Benny's reference to Martin related only to their future projects, taken in the context of Benny's boast about the murder that had just taken place, argued defense counsel, a jury could reasonably infer that Martin was also Benny's accomplice in the murder of Victor Soto.

Prior to trial the defense moved for a ruling that Cruz's hearsay testimony be admitted into evidence. Defense characterized Benny's conversation with the cabdriver as a declaration against penal interest and thus admissible under New York evidentiary rules. The trial judge ruled that the statement to Cruz was only partly admissible, however. He would allow the first half of the statement, but the portion referring to Martin, he ruled, had to be redacted as uncorroborated hearsay under New York law. Unlike the first half of the statement referring to Benny's role in Victor Soto's murder a few hours earlier, the references to Martin involved only his putative future role in helping Benny to "finish the job." Most significantly, unlike Benny's confession which was corroborated by his identification of the spot where Victor Soto had "fallen," there was no corroboration of the "Martin" portion of the statement. There was neither evidence that anyone named Martin in fact existed nor evidence to support the inference that this Martin had also participated in Victor Soto's murder. Upon learning the trial court's decision that Benny's hearsay declaration would be admissible only in a redacted version, defense counsel indicated that the statement as redacted had no value to

petitioner. Accordingly, the statement was not introduced at trial in any form.

At the trial, itself, several witnesses testified. Among these were the two eyewitnesses to the incident, Mejia and Hazel. Mejia testified that he had gotten a good look at the perpetrators as they fled but that he did not see either of the assailants in the courtroom. Hazel testified on the contrary that petitioner was the second assailant; even though he, Hazel, had had quite a bit to drink the day of the murder, and had seen the second assailant from behind only, he had recognized petitioner when he came up to the numbers parlor that night as someone he knew and also by his prominent tatoos. Although the defense argued that Hazel's testimony was incredible, the jury came back with a verdict of manslaughter in the first degree.

Petitioner appealed his conviction to the Appellate Division, First Department, arguing that the conviction violated his due process rights under the Fourteenth Amendment because it was against the weight of the evidence in that the State had failed to establish petitioner's identity as one of Victor Soto's murderers beyond a reasonable doubt. Petitioner argued as well that the exclusion of Benny's full statement to the cab driver, which petitioner claimed was adequately reliable for admissibility and which tended to exculpate petitioner, denied him his due process right to a fair trial, including his right to present evidence in his own behalf. On appeal petitioner also challenged the trial court's limitation of cross examination and its jury instruction on identification. The Appellate Division unanimously affirmed petitioner's conviction without opinion. Leave to appeal to the New York Court of Appeals was denied by the Chief Judge of that court on September 4, 1984.

Petitioner subsequently filed this petition for a writ of habeas corpus. In his petition he presents the same four grounds for reversal of his conviction as were presented in the state court appeals. Petitioner's lengthy brief, however, argues only the first two points of the petition: 1) denial of

due process based on the alleged insufficiency of the evidence supporting his conviction; and 2) denial of due process by the court's refusal to admit into evidence Benny's allegedly exculpatory hearsay statement. Indeed, petitioner makes no mention whatsoever in his brief of the trial court's cross-examination ruling or of its jury instruction on identification. In reviewing this petition, therefore, the court now presumes that petitioner has abandonned these latter challenges to his conviction and, accordingly, will deal only with petitioner's insufficiency of the evidence challenge and his challenge to the trial court's evidentiary ruling.

## I. Weight and Sufficiency of the Evidence.

█ In a challenge to a state criminal conviction brought under 28 U.S.C. Section 2254 based on an alleged insufficiency of evidence necessary to convict, a petitioner is entitled to habeas corpus relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (footnote omitted). Under this standard, a mere "modicum" of evidence will not suffice to support the constitutionality of a conviction. *Id.* at 320, 99 S.Ct. at 2789. Instead, the federal court reviewing the conviction must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789 (emphasis in the original); see also *Mallette v. Scully,* 752 F.2d 26, 31 (2d Cir.1984).

█ While under *Jackson v. Virginia, supra,* the federal court must assess state court findings of guilt for constitutional sufficiency under the "proof beyond a reasonable doubt" standard, factual determinations made by a state trial court are nonetheless entitled to a "presumption of correctness" on review in a federal habeas proceeding. *Sumner v. Mata,* 455 U.S.

591, 592, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (*per curiam*). Such deference to the factual determinations of state courts is dictated by the plain language of the federal habeas statute, 28 U.S.C. Section 2254(d), and reflects a Congressional respect for the federalism concerns implicated in these collateral proceedings. See *Jackson v. Virginia, supra* 443 U.S. at 322–23, 99 S.Ct. at 2790–91. The "presumption of correctness" standard is of course not absolute; under the terms of Section 2254, itself, the state court's "factual determination[s must be] fairly supported by the record." 28 U.S.C. Section 2254(d)(8).

Under the standard of *Jackson v. Virginia, supra,* it is clear that petitioner's challenge to the constitutional sufficiency of the evidence against him is without merit. In the situation presented by this case, one of conflicting eyewitness testimony, it seems evident that a reasonable trier of fact could well conclude that petitioner was guilty of manslaughter beyond a reasonable doubt. *See United States v. Rodriguez,* 702 F.2d 38, 43 (2d Cir.1983) (in situation where eyewitness testimony conflicts, setting aside of conviction is proper only where inculpatory testimony cannot be credited under any set of inferences and is thus "unbelievable as a matter of law"); *United States v. Shulman,* 624 F.2d 384, 388 (2d Cir.1980) (conviction affirmed where inculpatory testimony was not so incredible that no reasonable juror could believe it).

Petitioner argues, however, that his conviction must be reversed because he was convicted against the weight of the evidence. Indeed, petitioner argues, he was convicted on evidence that no reasonable juror could have found adequate to prove guilt beyond a reasonable doubt because the testimony of the upstanding eyewitness, Mejia, supported petitioner's claim of innocence while that of Hazel was so incredible as to be "unbelievable as a matter of law." Petitioner cites several aspects of Hazel's testimony that allegedly undermine it to a fatal degree. First, is the fact, on Hazel's own admission, that he

had drunk substantial amounts of alcohol in the hours preceding the incident. Petitioner argues that despite Hazel's claim not to have been drunk, his ability to observe events accurately must surely have been distorted. Secondly, petitioner relies on several minor discrepancies between the objective facts of the crime and Hazel's testimony to discredit the legal weight of this testimony.

As a general matter, issues of witness credibility are to be resolved by the jury and are not to be redetermined by federal courts in a habeas corpus proceeding. *See Marshall v. Lonberger,* 459 U.S. 422, 432–435, 103 S.Ct. 843, 849–51, 74 L.Ed.2d 646 (1983) (28 U.S.C. Section 2254(d) gives federal habeas courts no license to reassess witness credibility); *United States v. Taylor,* 464 F.2d 240, 245 (2d Cir.1972) (weighing of credibility is for the jury and not the judge). Moreover, although federal courts sitting in habeas review must judge whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original), "this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.' " *Id.* at 318–319, 99 S.Ct. 2789 (citing *Woodby v. INS,* 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362 (1966) and adding emphasis)).

Nonetheless, petitioner urges reversal of his conviction, relying on the proposition that if evidence at a state trial is partly exculpatory and partly inculpatory, and the inculpatory portion is fundamentally at odds with the physical evidence or otherwise unbelievable as a matter of law, habeas relief should be granted. Petitioner cites *Hawkins v. LeFevre,* 758 F.2d 866 (2d Cir.1985), a successful habeas petition, for this proposition. Upon examination, however, the proposition offered by petitioner about the habeas relief due in cases of mixed exculpatory and inculpatory evi-

dence, and indeed the *Hawkins* case, itself, are entirely consistent with a denial of habeas relief in the present case.

In *Hawkins* petitioner had been convicted of robbery after a bench trial at which the court was presented with evidence almost entirely exculpatory of the defendant. *Id.* at 868–69, 878. For example, the testimony of the robbery victims themselves tended to support the defense—one victim testified that he thought it was merely possible that defendant had been the perpetrator, and the other that she was certain defendant was *not* the perpetrator. Furthermore, defendant took the stand and presented an alibi that was "largely corroborated by the testimony" of another witness at trial. *Id.* at 869. The "sole link between [the defendant] and the crime," *id.* at 868, was the testimony of a security guard on duty when the robbery occurred. This sole inculpatory evidence was inadequate to sustain the conviction, however, because other objective evidence demonstrated conclusively that the security guard's testimony was unreliable; unless "his vision were capable of penetrating a set of solid double doors, turning left, ascending a staircase, and again turning left," *id.* at 869, the security guard could not have witnessed the robbery. On this record, the federal reviewing court held that petitioner was entitled to habeas relief because no rational trier of fact could have found him guilty of armed robbery beyond a reasonable doubt. *Id.* at 871 n. 7; *see also id.* at 877–879 (other constitutional errors committed during the trial were not harmless error because of the paucity of evidence supporting conviction).

█ The court cannot agree with petitioner that the facts in his case compel a result similar to that reached in *Hawkins*. The exculpatory evidence in petitioner's case, that is, Mejia's testimony, cannot compare with that offered in *Hawkins*. More importantly, there is no comparison between the clearly incredible security guard testimony in *Hawkins* and the merely vulnerable testimony of Hazel in petitioner's case.

Although Hazel's intoxication at the time of the crime and the discrepancy between certain details of his testimony and some of the physical evidence introduced at the trial would make it possible for a reasonable juror to give Hazel's testimony less weight than Mejia's, the core of Hazel's testimony was corroborated and facially credible. Hazel observed the altercation at the numbers parlor at close range. He testified that the two assailants drew knives with stainless steel blades and that the victim was stabbed several times before stumbling out into the street. Hazel only saw petitioner's back during the incident, but he testified that he had seen petitioner in the past and that he knew him from the neighborhood. He testified too that the assailant, like petitioner, had noticeable tatoos. In contrast to the *Hawkins* case, no evidence was presented to the jury that Hazel's view of the events was physically impossible.

Hazel's general credibility was tested on cross-examination and the defense had ample opportunity to impeach his testimony and expose whatever holes may have existed in his account of the events. As to petitioner's repeated assertions that Hazel's testimony was incredible or unreliable as a matter of law because of his intoxication at the time of the murder, this information was of course emphasized by the defense in cross-examination and in its summation to the jury. Citizens do not lose their common sense when they sit in a jury box, and the court must assume that in deciding to credit Hazel's testimony the jury took into account the fact that he had had a bit to drink on the night of the murder.

The discrepancies between Hazel's testimony and certain undisputed facts also fail to render Hazel's identification of petitioner as an assailant incredible or unreliable as a matter of law, as occurred in *Hawkins*. Petitioner points out, for example, that Hazel reported the victim had been stabbed four times, when in fact, the autopsy report revealed eight stab wounds. Petitioner also notes that while Hazel de-

scribed the assailant as having tatoos on his arms, neck and stomach, in fact petitioner had no tatoos on his arms, and according to Hazel's own testimony, Hazel did not see the assailant's front or stomach the night of the crime. Such discrepancies may well go to the credibility of Hazel's testimony or to its weight, clearly matters for the jury to assess, but they do not render Hazel's identification of petitioner as one of the assailants incredible as a matter of law. Indeed, these minor discrepancies do not even cast such doubt on Hazel's testimony that petitioner could sustain a good faith argument that the jury finding which credited the testimony is not entitled to this court's deference. *Compare Pfeiffer v. Silver,* 712 F.2d 799, 805 (2d Cir.1983) (reversing district court verdict in civil case as clearly erroneous where testimony about accident location was directly contradicted by skid mark evidence); *Honeycutt v. Ward,* 612 F.2d 36, 40 (2d Cir.1979), *cert. denied* 446 U.S. 985, 100 S.Ct. 2969, 64 L.Ed.2d 843 (1980) (reversing district judge's finding in favor of habeas petitioner where petitioner's claim regarding guilty plea was contradicted by court documents).

In short, habeas relief was warranted in *Hawkins* because the only inculpatory testimony in that case was definitively belied by evidence that it was physically impossible for the witness even to have seen the crime. With the only inculpatory evidence in the case thus incredible as a matter of law, no reasonable juror could have found defendant guilty of the crime charged beyond a reasonable doubt. In short, *Hawkins* is an unproblematic application of the *Jackson v. Virginia* standard for habeas relief to petitioners challenging the constitutional sufficiency of the evidence against them. The reviewing court in *Hawkins* did not reassess the balance of conflicting evidence as much as it determined that there was in fact no real evidentiary conflict since the only inculpatory evidence was legally incredible and thus without substance.

In the present case, however, where the inculpatory testimony that competed with the exculpatory testimony was such that a reasonable juror could well have chosen to credit it despite its flaws, and where petitioner presented no exculpatory evidence except for Mejia's failure to identify him as an assailant, this court cannot conclude as a matter of law that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia, supra,* 443 U.S. at 324, 99 S.Ct. at 2791–92. Accordingly, petitioner's insufficiency of the evidence argument presents no colorable ground for habeas relief.

2. *Exclusion of Exculpatory Hearsay Evidence.*

Petitioner's second ground for habeas relief is that the trial judge's exclusion of that portion of Benny Leon's hearsay statement referring to a certain "Martin" violated petitioner's due process rights under the Fourteenth Amendment.

To prevail on a claim that an evidentiary error deprived him of due process, a petitioner must show that the error was so serious as to deny him his right to a fair trial. See *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Collins v. Scully,* 755 F.2d 16, 19 (2d Cir.1985). Where evidence is erroneously excluded the test for determining whether the ruling denied the defendant a fair trial is whether the excluded evidence would have created " 'a reasonable doubt that did not otherwise exist.' " *Collins, supra,* 755 F.2d at 18 (citing *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976). See also *Chambers v. Mississippi, supra* 410 U.S. at 302–03, 93 S.Ct. at 1049–50.

Petitioner argues that Cruz, the cab driver, should have been allowed to testify as to Benny Leon's statement because although the statement was clearly hearsay, it was admissible as a declaration against penal interest, a hearsay exception recognized by New York State. *See People v. Settles,* 46 N.Y.2d 154, 412 N.Y.S.2d 874, 882–884, 385 N.E.2d 612, 620–622 (1978). For the admission into evidence of hearsay

declarations against penal interest, *Settles* held that four elements

> must be present: first, the declarant must be unavailable as a witness at trial; second, when the statement was made the declarant must be aware that it was adverse to his penal interest; third, the declarant must have competent knowledge of the facts underlying the statement; and fourth, and most important, supporting circumstances independent of the statement itself must be present to attest to its trustworthiness and reliability. *People v. Settles*, 46 N.Y.2d 154, 169, 412 N.Y.S.2d 874, 882, 385 N.E.2d 612, 620.

The unavailability and competence elements of *Settles* were not at issue with regard to any part of Benny's statement. The adversity of interest required by *Settles* was supplied, argues petitioner, by the fact that the declarant had just admitted to a brutal murder and was advertising his plans for future killing sprees. The corroboration required by *Settles* was provided by the facts that the murder had just occurred a short time earlier, and most importantly, by Benny's accurate announcement to the cab driver of the spot where his victim had "fallen."

Petitioner argues specifically that Cruz should have been permitted to testify as to that portion of Benny's statement regarding the role of a man named Martin in helping him to "finish up" his murderous criminal work. In the context of the whole conversation, claims petitioner, which began by Benny's flaunting of Victor Soto's earlier killing, the reference to Martin could create an inference in the jurors' minds that this Martin had also been Benny's accomplice in the murder of Victor Soto.

The State's case against petitioner was not overwhelming. There can be little argument that this inference linking the "Martin" who would help Benny "finish up the job," with the murder of Victor Soto, clearly a reasonable inference under the circumstances, may have created in the jurors' minds a "reasonable doubt that did

not otherwise exist," *Collins, supra,* 755 F.2d at 18, as to petitioner's guilt. It is not adequate, however, for habeas relief to be granted, simply that the outcome of the trial may have been more favorable to petitioner had the statement been admitted into evidence. *Grochulski v. Henderson,* 637 F.2d 50, 56 (2d Cir.1980), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1383, 67 L.Ed.2d 358 (*"Chambers* do[es] not countenance the setting aside of a state evidentiary rule ... simply because it seems fairer to defendant to abrogate the rule.") The raw measure of such benefit to defendant clearly cannot be the standard for determining constitutional error in excluding certain evidence. Such a standard would preclude the application of most rules of evidence altogether if their particular application was not in a defendant's interest, and could require the admissibility of the wildest and most unreliable sorts of hearsay evidence if some inference favorable to the defendant might be created by their introduction. Instead, the court must inquire whether the evidentiary ruling in this case, besides being prejudicial to defendant, was erroneous either under the rule set forth by New York State in *Settles, see Taylor v. Curry,* 708 F.2d 886, 890–91 (2nd Cir.1983) (habeas review finding state evidentiary ruling erroneous under New York law), or else under the broader standards set forth by the Supreme Court in *Chambers v. Mississippi.*

It is clear that the trial judge's decision to exclude the "Martin" portion of Benny's statement was a correct application of the New York hearsay exception for declarations against penal interest that was set forth in *Settles.* Indisputably, the first portion of Benny Leon's statement to the cab driver boasting of his murder of Victor Soto was corroborated and against the declarant's penal interest, and thus admissible under *Settles.* It cannot seriously be argued, however, that because this first part of the statement met the reliability criteria set forth in *Settles* that Benny's every subsequent utterance qualifies as admissible hearsay. The trial judge was correct to separately assess the "Martin" portion of Benny's statement for the indicia of

reliability required by *Settles*. Evidentiary rulings under any hearsay exception must always be made in light of the exception's underlying concern for reliability, and if individual segments of a hearsay statement do not exhibit the required indicia of reliability, then the rationale for the exception to the hearsay rule ceases to operate.

Exclusion of the "Martin" portion of Benny Leon's statement in the cab was clearly proper under the New York criteria for admissibility because the statement at least arguably lacked the required element of personal adversity, and surely lacked the corroboration element. To begin with, it seems problematic whether that portion of Benny's statement referring to *Martin*'s future crimes was sufficiently adverse to Benny's own penal interest to permit its admission into evidence under *Settles* or other traditional formulations of this hearsay exception. Conceivably, however, even the "Martin" portion of the conversation was sufficiently adverse to Benny's own interests to permit admissibility under the penal interest exception. *Cf. United States v. Brainard*, 690 F.2d 1117, 1124 (4th Cir.1983), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985); *United States v. Barrett*, 539 F.2d 244, 252–253 (1st Cir.1976) (statement of a third party's lack of criminal involvement may be against declarant's own penal interest by strengthening the impression of declarant's insider knowledge and therefore guilt). In any event, the trial judge did not rely on this element of the hearsay exception in his decision to redact the "Martin" portion of Benny's declaration.

The most compelling defect in the "Martin" portion of Benny's statement for purposes of admissibility under the *Settles* rule, and the ground on which the trial judge in petitioner's case based his ruling, was its lack of corroboration. There was no independent evidence that anyone named Martin even existed, much less that he, in fact, would be assisting Benny in "finishing the job" that had begun with Victor Soto's death. There was also not a speck of corroboration placing any person who might be this "Martin" at the scene of Victor Soto's murder. Thus, the inference on an inference that because Benny said "Martin" would be working with him in the future, it was "Martin" and not petitioner who was Benny's accomplice in killing Victor Soto, is also entirely without corroboration. It hardly need be pointed out that this lack of corroboration is not the only problem with allowing into evidence Benny's hearsay statement about his putative future activities with Martin for the purpose of proving inferentially his past activities with this same Martin.

As to the lack of corroboration, *Settles* leaves no doubt that where a third person is criminally implicated by a declaration against penal interest, the declaration may be admitted "[o]nly when there is other evidence tending to show that the [person implicated] as his accomplice actually *committed* a crime...." *People v. Settles*, 46 N.Y.2d 154, 169, 412 N.Y.S.2d 874, 883, 385 N.E.2d 621 (1978). "By way of illustration" of the kind of corroboration that would suffice, the Court of Appeals listed "eyewitness testimony" placing [the third party] at or near the scene of the crime, or proof of his possession of the fruits or instrumentalities used to commit the crime...." *Id.*, 412 N.Y.S.2d at 884, 385 N.E..2d 622. *See also Pina v. Henderson*, 586 F.Supp. 1452, 1458 (E.D.N.Y.1984) (Weinstein, Ch. J.), rev'd on other grounds, 752 F.2d 47 (2d Cir.1985) (habeas review emphasizing the importance of *Settles'* corroboration requirement). Under the established New York law, therefore, the decision to redact the references to Martin from Benny's hearsay statement was wholly proper, and indeed, necessary.

The question remains whether the exclusion of the hearsay references to "Martin" was proper under the broader standard created by the Supreme Court in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In *Chambers* the Court held that although the exclusion of certain hearsay evidence was proper under Mississippi rules of evidence, under the facts of the particular case the evidence should have been admitted because it had

sufficient indicia of reliability, and, in tandem with a second overly strict evidentiary ruling, its exclusion deprived the defendant of a fair trial.

The hearsay evidence excluded in *Chambers* consisted of a third party's confession to three different people that he and not defendant was responsible for the crime. Because Mississippi, like the majority of states, did not recognize the hearsay exception for declarations against penal interest, and also because the declarant was available to testify, the trial court did not allow the hearsay confessions into evidence. In holding that this ruling was erroneous, the Supreme Court relied on the simple principle that that "the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.* at 302, 93 S.Ct. at 1049. The Court was careful to stress, however, that it was establishing "no new principles of constitutional law," nor was it signalling "any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures." *Id.*

In determining that the hearsay confessions in *Chambers* should have been allowed into evidence despite the fact that the applicable Mississippi hearsay rule, strictly interpreted, required their exclusion, the Court stressed that the reliability concerns underlying the hearsay rule were unquestionably met in Chambers' case. It listed several distinct indicia of the inculpulpatory declarations' reliability. Most prominent among these were the facts that the statements sought to be admitted were confessions by the declarant, himself, made to three separate people immediately after the crime, and that these hearsay confessions were corroborated by other evidence in the case, including an independent sworn confession by the declarant to the authorities, and testimony that the declarant had been seen with a gun immediately after the shooting.

*Chambers*, accordingly, provides no support for petitioner's argument that the evidentiary rulings in his own case deprived him of a fair trial. Unlike the instant case, *Chambers* involved the state's mechanical application of an evidentiary rule in a context where the underlying concerns of that rule, i.e., the reliability of hearsay statements, were clearly satisfied. In petitioner's case, in contrast, the reliability of using Benny's hearsay reference to Martin to show that Martin had been his accomplice in killing Victor Soto, is dubious at best. There is thus no argument for disregarding "the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures," *Chambers, supra* at 302, 93 S.Ct. at 1049, for in petitioner's case, the rules were rationally applied out of a legitimate concern for reliability. Rather, in light of the long-standing and well-warranted respect accorded to the hearsay rule, *see Chambers* at 302, 93 S.Ct. at 1049, and the fact in this case that the references to "Martin" did not bear the "persuasive assurances of trustworthiness," *id.*, that would have justified an exception to the rule against hearsay and that justified such an exception in *Chambers*, the ruling in petitioner's case must be sustained.

Should there be any doubt that the *Chambers* holding must be, as the Supreme Court emphasized, limited to the sorts of extreme facts presented by that case, *see id.* at 303, 93 S.Ct. at 1049–50, subsequent Second Circuit decisions remove such doubt. Under this Circuit's interpretation of *Chambers*, trial court evidentiary rulings will not be set aside except where the evidence excluded is of extreme probative value, for example, confessions of a third party, and where the evidence has substantial indicia of reliability, including corroboration. *See Grochulski v. Henderson*, 637 F.2d 50, 53–54 (2d Cir. 1980), *cert. denied* 450 U.S. 927, 101 S.Ct. 1383, 67 L.Ed.2d 358. See also *Lipinski v. New York*, 557 F.2d 289, 292–93 (2d Cir. 1977), *cert. denied* 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978); *United States v. Guillette*, 547 F.2d 743, 754 (2d Cir. 1976), *cert. denied* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977).

Furthermore, the well-foundedness and constitutionality of the New York State corroboration requirement as applied in this case is confirmed by the existence of a similar corroboration requirement in the Federal Rules of Evidence as well as by the rulings of other courts in comparable contexts. Federal Rule of Evidence 804(b)(3) specifically requires corroboration for the admissibility of exculpatory declarations against penal interest. *See also United States v. Barrett*, 539 F.2d 244, 253 (1st Cir.1976) (underscoring the importance of this corroboration requirement of the Federal Rules); *United States v. MacDonald*, 688 F.2d 224, 233 (4th Cir.1982), *cert. denied* 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983). As to declarations against penal interest implicating third parties, numerous courts have stressed the necessity of corroboration with respect to that portion of a declaration implicating the third person. *See United States v. Wilkinson*, 754 F.2d 1427, 1436 (2d Cir.1985), *cert. denied* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (citing *United States v. MacDonald*, 688 F.2d 224, 232–33) (declaration against penal interest implicating third person not admissible where there is insufficient corroboration of third party's involvement); *United States v. Katsougrakis*, 715 F.2d 769, 777–78 (2d Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984) (declaration against penal interest exception to the hearsay rule may be used to admit hearsay declarations inculpatory of third parties only where attendant circumstances and independent corroboration of third party's involvement confirm the declaration's trustworthiness); *United States v. Callahan*, 442 F.Supp. 1213, 1224 (D.Minn.1978) (Devitt, Ch. J.) (hearsay declarations implicating third parties excluded where insufficient corroboration of third parties' involvement existed), *rev'd on other grounds sub nom United States v. Larson*, 596 F.2d 759, 780 (8th Cir.1979). The corroboration requirement imposed in petitioner's case to exclude the "Martin" portion of Benny's statement was thus no eccentric or "mechanistic" application of a hearsay rule comparable to what occurred in *Chambers* and working merely to defeat the ends of justice.

The court having found that the trial court committed no constitutional error in excluding the uncorroborated hearsay evidence that defense wished to introduce at petitioner's trial, petitioner's second ground for habeas relief also must fail.

CONCLUSION

Accordingly, the claims of constitutional error in petitioner's state trial being without merit, petitioner's request for a writ of habeas corpus is denied.