UNITED STATES of America, Appellee,

v.

Frank Anthony SPINELLI, Defendant–Appellant.

No. 1125, Docket 88–1031.

United States Court of Appeals, Second Circuit.

Argued May 5, 1988.
Decided May 25, 1988.

Richard A. Stanley, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., for the S.D. of New York, Linda Imes, Asst. U.S. Atty., New York City, on the brief), for appellee.

Loren I. Glassman, White Plains, N.Y., for defendant-appellant.

Before LUMBARD, OAKES, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Frank Anthony Spinelli appeals from a judgment of conviction, entered after a bench trial on a stipulated record in the United States District Court for the Southern District of New York, Charles L. Brieant, *Chief Judge*, convicting him on one count of conspiracy to manufacture and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846 (1982), and one count of the underlying substantive offense, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1) (1982 & Supp. IV 1986), and 18 U.S.C. § 2 (1982). On this appeal, Spinelli contends that the district court erred in refusing to suppress evidence seized from his home and truck by law enforcement agents who failed to announce their authority and purpose before entering as required by 18 U.S.C. § 3109 (1982). For the reasons below, we affirm.

## I. BACKGROUND

On March 27, 1987, federal agents associated with the United States Drug Enforcement Administration ("DEA") Task Force ("Task Force") obtained a search warrant for Spinelli's home and adjacent grounds in Valhalla, New York. Section 3109 of 18 U.S.C. (called the "knock-and-announce" statute) provides, in essence, that an officer seeking to execute such a warrant should give notice of his authority and purpose before entering a house forcibly; an exception has generally been recognized where unannounced entry is required by exigent circumstances.

In executing the search warrant on March 27, the law enforcement agents did not knock at Spinelli's door or announce their authority or purpose. Rather, two Task Force members drove onto Spinelli's front lawn, then went to the front door and kicked it in. These agents, who were local police detectives at least one of whom had been deputized as a federal marshal, had never executed a federal warrant before and were unaware of the knock-and-announce statute. Once inside the house, they arrested Spinelli and a codefendant. They and other agents searched the house, finding a methamphetamine laboratory in an upstairs bedroom, and searched a U-Haul truck parked in the driveway, finding 362 grams of methamphetamine.

Spinelli moved to suppress the evidence seized from his home and the truck on the ground, *inter alia*, that the entry and seizures violated the knock-and-announce statute. The government urged that the motion be denied because the unannounced entry was justified by exigent circumstances. Spinelli argued that noncompliance with the statute could not be so justified because the entering officers were not even aware of the statute.

Following an evidentiary hearing, described in greater detail in Part II.B. below, the district court denied the motion to suppress, stating that the standard for determining whether exigent circumstances warranted noncompliance is "objective[ ] rather than subjective[ ], and that the subjective thinking of the arresting officer of [*sic* ] is of no moment." (Transcript of Hearing, October 6, 1987, at 61.) The court elaborated as follows:

I think the proper standard of whether there are exigent circumstances is not

what the officers knew or what they decided. If timid officers violated the knock-and-announce requirement, because they thought exigent circumstances existed, and the Court, in fact, made a determination that that exigent circumstances [*sic*] did not exist, based on the reasonable-person test, then that decision, no matter how hard they thought about it, would be a nullity. And I suppose where people recklessly enter without regard to the statute because they simply do not know any better and nobody told them, if, in fact, exigent circumstances did exist, would be entirely lawful and justifiable.

(*Id.* at 60–61.) Applying the objective standard, the court found that "a reasonable officer ... could have reached the conclusion that it would not be necessary to knock and announce...." (*Id.* at 61.) Accordingly, the court denied the motion to suppress.

## II. DISCUSSION

■ On appeal, Spinelli argues that the district court erred in applying only an objective standard and should have applied a subjective standard as well, and that application of the latter standard should have led the court to suppress the evidence seized. We agree that the proper standard for determining whether exigent circumstances warranted noncompliance with the knock-and-announce statute comprises both subjective and objective components. Nonetheless, though the district court erred by applying only the objective component, we affirm the denial of the motion to suppress because the evidence presented at the suppression hearing demonstrated that both parts of the standard were satisfied.

A. *The Standard*

Section 3109 of Title 18 provides as follows:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109 (1982). Property seized in violation of § 3109 may be excluded from evidence. *United States v. Burke*, 517 F.2d 377, 386 n. 13 (2d Cir.1975).

■ Notwithstanding a failure to comply with § 3109, the evidence seized need not be suppressed if the noncompliance was excused by exigent circumstances. *See Sabbath v. United States*, 391 U.S. 585, 591 & n. 8, 88 S.Ct. 1755, 1759 & n. 8, 20 L.Ed.2d 828 (1968) ("there is little reason" to doubt that exceptions to constitutional strictures on entering a dwelling also apply to the requirements of § 3109, citing *Ker v. California*, 374 U.S. 23, 47, 83 S.Ct. 1623, 1636, 10 L.Ed.2d 726 (1963) (opinion of Brennan, *J.*, dissenting)). Thus, this Court has recognized that noncompliance with § 3109's knock-and-announce requirement may be excused

"(1) where the persons within already know of the officers' authority and purpose, or

(2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or

(3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted."

*United States v. Manning*, 448 F.2d 992, 1001 (2d Cir.) (en banc) (quoting *Ker v. California*, 374 U.S. at 47, 83 S.Ct. at 1636 (opinion of Brennan, *J.*, dissenting)), *cert. denied*, 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed. 2d 548 (1971); *United States v. Artieri*, 491 F.2d 440, 444 (2d Cir.) (applying § 3109 standards to warrantless entry, in accordance with *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958)), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 670 (1974).

In determining whether exigent circumstances warranted unannounced entry, we have applied both a subjective and an objective test. In *Artieri*, for example, we noted that "the agents making the entry had

reasonable grounds to believe and did believe" that the target of their investigation was likely to be armed. 491 F.2d at 444. In *Manning*, we noted that the entering agents, after knocking at the defendant's door, had heard scurrying sounds inside and were "entitled to use their knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic, and particularly of those known to have had previous experience with the criminal law." 448 F.2d at 998–99; *see id.* at 1002. *See also United States v. Mapp,* 476 F.2d 67, 75 (2d Cir.1973) (same).

■ Section 3109 reflects " 'the reverence of the law for the individual's right of privacy in his house,' " a reverence that is " 'deeply rooted in our heritage and should not be given grudging application.' " *Sabbath v. United States,* 391 U.S. at 589, 88 S.Ct. at 1758 (quoting *Miller v. United States,* 357 U.S. at 313, 78 S.Ct. at 1198). Accordingly, we adhere to the principle implicit in our prior cases that exigent circumstances may excuse noncompliance with the knock-and-announce requirement only where (1) the officers believe there is an emergency situation and (2) their belief is objectively reasonable. To excuse noncompliance either when the officers had no thoughts of emergency or when there was no reasonable basis for such thoughts would inappropriately compromise the privacy interest to be protected.

### B. *The Evidence*

Application of the proper standard to the facts of the present case does not require us to reverse the denial of the motion to suppress, for the government's evidence at the suppression hearing, none of which was discredited by the court, was sufficient to meet both components of the standard. That evidence, taken in the light most favorable to the government, *see United States v. Waltzer,* 682 F.2d 370, 371 n. 2 (2d Cir.1982), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983), showed the following.

The affidavit submitted in support of the application for a search warrant stated, *inter alia,* that Spinelli had been convicted in 1983 of manufacturing methamphetamine and that agents had observed activity at Spinelli's home during the previous few days that indicated that manufacture of methamphetamine was ongoing. The affidavit stated that in the experience of the affiant, a member of the Task Force who testified at the hearing, narcotics dealers often carried guns.

At about 3 p.m. on March 27, following issuance of the warrant, some 20 agents gathered in the parking lot of a cemetery across the Taconic Parkway from Spinelli's house. From that vantage point, the house was in plain view. Shortly thereafter, Spinelli left the house and drove to a delicatessen, followed by one of the officers. During this trip, the officer radioed back that he believed Spinelli had spotted the surveillance. After Spinelli returned home, he emerged from the house, peered in the direction of the surveillance team, and then went back inside. At this point, DEA Agent Michael Murphy gave the order to execute the warrant. Murphy was aware of the knock-and-announce statute and of the exigent-circumstances exception to it; he did not instruct any of the Task Force members as to the requirements of the statute or as to its exceptions.

The first Task Force members to enter Spinelli's house were Westchester County Police Detectives Frank Prete and his partner. Prete was not aware of the knock-and-announce statute or of the exception for exigent circumstances. He was, however, concerned for the safety of the officers for several reasons. Prete had investigated Spinelli as early as 1983; reliable sources had led him to believe Spinelli might be armed, that his street name was "Mad Man," and that he had a reputation for violence. In addition, he knew that upon a previous arrest, Spinelli had been in possession of a handgun. He was also aware of a United States Marshal's bulletin stating that Spinelli was wanted for parole violation and should be considered armed and dangerous. Further, Prete had known since 1983 that Spinelli was thought to be involved in manufacturing methamphet-

amine. Prete had learned in a DEA training course that chemicals involved in the manufacture of methamphetamine are highly volatile. When the order to execute the warrant was given, Prete believed Spinelli was aware of the agents' presence, and Prete was concerned that Spinelli might attempt to destroy evidence by causing an explosion.

Accordingly, Prete and his partner drove their car onto Spinelli's front lawn, and went to the front door and kicked it in without knocking or announcing their presence or authority. They did not make a conscious decision to enter without knocking; they "just did it" in order to get in as quickly as possible in light of their belief as to the dangers involved in executing the warrant.

We conclude that this evidence amply demonstrates that the executing officers had the subjective belief that it was important to enter Spinelli's residence as quickly and efficiently as possible in order to minimize the possible peril to themselves and to others within who could be endangered by explosions if Spinelli sought to destroy evidence. Hence, the subjective part of the exigent circumstances test was met.

The objective component of the test was also met. The record as a whole, including the evidence of Spinelli's past history of firearm possession, his reputation for violence, his apparent awareness of the surveillance, and the factual basis for believing that the chemicals used in the manufacture of methamphetamine were flammable and explosive, amply supported the district court's conclusion that any belief on the part of the officers that it was necessary to enter without delay was objectively reasonable.

The fact that Prete was unaware of the statute is, for present purposes, not material. What is dispositive is that the agents' actual concerns were fully justified by facts that objectively constituted exigent circumstances. Since both the subjective and the objective portions of the test were met, noncompliance with the statute was justified, and the motion to suppress was properly denied.

## CONCLUSION

We have considered all of Spinelli's arguments in support of his appeal and have found them to be without merit. The judgment of conviction is affirmed.

OAKES, Circuit Judge (concurring):

I concur.

Despite the concerns I have recently expressed in *United States v. Cattouse*, 846 F.2d 144, 148 (2d Cir.1988) (dissenting opinion), about erosion of the Fourth Amendment warrant clause by expansion of the exigent circumstances "exception," I concur here, where of course the officers did have a warrant. The knowledge they possessed of Spinelli's background and operations coupled with the volatile nature of the methamphetamine laboratory (which was housed in an upstairs room complete with a window fan and a visibly rusted screen) and the presence of children in the vicinity would suggest to a reasonable person that time was of the essence, once it appeared that Spinelli may have spotted the surveillance. I therefore join in Judge Kearse's able opinion.