**UNITED STATES of America**

v.

**Maurice BRAHMS, Defendant.**

**No. 80 Cr. 620 (CHT).**

United States District Court, S.D. New York.

Oct. 9, 1990.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Michael D. Pinnisi, Asst. U.S. Atty., of counsel), New York City, for U.S.

John C. Klotz, New York City, for defendant.

## OPINION

TENNEY, District Judge.

This case is before the court on defendant's writ of error coram nobis, in which he seeks to vacate his guilty plea to tax fraud. For the reasons set forth below, the writ is denied.

## BACKGROUND

In 1980, a federal grand jury began an investigation into possible tax fraud by the owners of several discotheques in New York City. Maurice Brahms, the defendant in this action, was the owner of two such establishments, "New York, New York" and "Infinity." Prior to the investigation, Brahms had retained a lawyer, the late Roy Cohn, to provide general legal services for his discotheque businesses. When the grand jury investigation began, Cohn was retained by Ian Schrager and Steve Rubell, the owners of the discotheque "Studio 54," who had become targets of the investigation. When Brahms learned that he was also a target, he retained another attorney, James LaRossa, to represent him.

Brahms eventually waived indictment and pleaded guilty to two counts of tax fraud. He did not file any motions prior to entry of his plea; he swore to all facts and waivers at the time of the plea, as required by Federal Rule of Criminal Procedure 11; and he did not appeal his conviction. He also admitted that he had concealed $1,066,-449 in income from the United States, with a tax due and owing of $670,095. The court sentenced him to three years in prison, three years' probation and a fine of $20,000.

In this motion, Brahms asserts several grounds for invalidating his plea, only one of which merits discussion. Essentially, he contends that Cohn violated his attorney-client relationship with Brahms by supplying the Government with privileged and incriminating information about Brahms' activities. Brahms claims that Cohn did this to gain more favorable treatment for Cohn's other clients, Rubell and Schrager. According to Brahms, the Government used this information to obtain a search warrant that was executed at his home, netting much of the evidence against him. Brahms maintains that Cohn's alleged misconduct provided grounds to have the evidence suppressed. He claims, however, that he elected not to pursue the issue and decided to plead guilty after receiving threats from Cohn, through an intermediary, warning him that his family would be harmed if he challenged.

## DISCUSSION

■ Under Federal Rule of Criminal Procedure 12(f), "[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial ... shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." Therefore, absent good cause, the failure to challenge a search warrant before pleading guilty ordinarily bars any consideration of the merits of such a challenge in a collateral attack on the judgment of conviction. *See Davis v. United States*, 411 U.S. 233, 242, 93 S.Ct. 1577, 1583, 36 L.Ed.2d 216 (1973); *Indiviglio v. United States*, 612 F.2d 624, 630 (2d Cir.1979), *cert. denied*, 445 U.S. 933, 100 S.Ct. 1326, 63 L.Ed.2d 768 (1980). Standing alone, Brahms' allegations would establish a colorable argument for good cause and, were they presented in a habeas petition, might compel the court to hold an evidentiary hearing, or to require the Government to respond to Brahms' contentions with appropriate affidavits. *See Blackledge v. Allison*, 431 U.S. 63, 80 & n. 21, 82–83 & n. 25, 97 S.Ct. 1621, 1632 & n. 21, 1633–34 & n. 25, 52 L.Ed.2d 136 (1977).

■ Nevertheless, Brahms has asserted his claims in a petition for writ of error coram nobis because he has fully completed his sentence and does not face the potential loss of liberty required to bring a habeas petition under 28 U.S.C. § 2255 (1988). The Supreme Court has noted that the "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through [the] extraordinary remedy [of writ of error coram nobis] only under circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954); *see also Blackledge*, 431 U.S. at 83, 97 S.Ct. at 1632 (Powell, J., concurring) (noting the importance of finality to a system of justice). Therefore, in contrast to the weight that it must accord allegations in a habeas petition, the court

may consider the previous proceedings of the case underlying a coram nobis action and reject those contentions in the petition that, in its judgment, are palpably implausible in light of the competent evidence already in the record. *See Bruno v. United States,* 474 F.2d 1261, 1263 (8th Cir.1973); *see also Machibroda v. United States,* 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962) ("The language of [section 2255] does not strip the district courts of all discretion to exercise their common sense."); *Dalli v. United States,* 491 F.2d 758, 762 n. 6 (2d Cir.1974) (same). If the interests of justice would best be served by doing so, it may summarily deny relief without an evidentiary hearing. *See Bruno,* 474 F.2d at 1263.

■ The justification for examining the entire record results, in part, from a recognition that the interests involved in a coram nobis action are, as in this case, usually less significant than the liberty interests implicated in a habeas petition. Indeed, Brahms claims only that he has reentered the nightclub business and that his conviction prevents him from procuring a liquor license. He also claims that he cannot obtain a real estate license and that his permit to carry a firearm has been revoked. Although these, and the general stigma associated with a criminal conviction, are obviously important considerations to Brahms, they do not rise to the level of the liberty interests at stake in a habeas petition.

Moreover, Brahms contends only that he was denied the right to challenge the validity of the search warrant that provided the evidence against him. Such claims "do not 'impugn the integrity of the fact-finding process or challenge evidence as inherently unreliable; rather, the exclusion of illegally seized evidence is simply a prophylactic device intended generally to deter Fourth Amendment violations by law enforcement officers.'" *Stone v. Powell,* 428 U.S. 465, 479, 96 S.Ct. 3037, 3045, 49 L.Ed.2d 1067 (1976) (quoting *Kaufman v. United States,* 394 U.S. 217, 224, 89 S.Ct. 1068, 1073, 22 L.Ed.2d 227 (1969)). Therefore, Brahms' contentions pertain not to his factual guilt or innocence, but only to whether he was denied the opportunity to avail himself of a judicial remedy created to serve larger societal goals.

Examining these contentions against the history of this case, the court concludes that an evidentiary hearing is not warranted. Brahms claims that he was intimidated by Cohn, and pleaded guilty only because he feared for the safety of his family. When the court accepted his plea, however, Brahms stated under oath that he had not been coerced. Plea Transcript at 2 (Declaration of Michael D. Pinnisi, dated April 26, 1990, Exhibit A). He now suggests that he told his attorney, LaRossa, that he was not freely entering into the plea arrangement and that he wanted to inform the court "of the violations of my rights and my fears of collaboration" between Cohn and the Government. Reply Affidavit of Maurice Brahms, sworn to May 14, 1990, ¶ 5. Brahms claims that LaRossa told him that the court would not want to hear his statements. *Id.* He states that after LaRossa discouraged him from bringing his concerns to the court's attention, he "stuck with the script" and pleaded guilty. *Id.* The court does not recall any irregularities in the proceedings when Brahms entered his plea. In addition, it can think of no reason why LaRossa, an experienced criminal defense attorney, would not have brought his client's alleged concerns to the court's attention. The absence of any corroborating affidavit from LaRossa renders Brahms' characterization of the substance of conversations between them at the time of the plea particularly suspect.

Brahms did go to the effort of procuring an affidavit from an attorney that he subsequently retained, Elkan Abramowitz. *See* Affidavit of Elkan Abramowitz, sworn to May 11, 1990 (Brahms Reply Aff. Exh. Q). In 1981, Abramowitz prepared Brahms' unsuccessful Rule 35 motion to reduce his sentence. Presumably, Brahms discussed the history of the case with Abramowitz before the motion was prepared. It would seem reasonable to assume that Brahms, who allegedly believed he was sitting in prison on the basis of a coerced plea, would have mentioned the

threats and coercion to Abramowitz. Yet, there is no mention in Abramowitz' affidavit of any such discussions. Indeed, the Rule 35 motion itself was filled with statements such as:

> Since the inception of his legal difficulties, Mr. Brahms recognized his wrong and has made every effort to spare his family the embarrassment and agony of a long drawn out affair. When finally confronted with his transgressions, he chose not to deny his guilt, but rather to accept his punishment and get on with his life. Although his attorney was prepared to move for suppression of the records forming the basis of the charges against him which were seized pursuant to a search warrant, Mr. Brahms chose to save the government the time and expense of a lengthy litigation and decided to forego any possible legal defenses, waive an indictment and plead guilty to an information....
>
> .... Mr. Brahms is truly contrite over his participation in these crimes.

Memorandum in Support of Defendant's Motion to Reduce Sentence, docketed April 1, 1981, at 8–9.

The lack of prior corroboration for Brahms' claims is particularly significant. Brahms suggests now that he was so fearful of Cohn, while he was alive, that he could not reveal the threats to anyone. That claim is difficult to reconcile with Brahms' own behavior before Cohn's death; he apparently had no qualms about revealing his alleged concerns to LaRossa before pleading guilty. In addition, Brahms has not provided any reason for waiting several years until after Cohn died to come forward with his claims. One would have thought that once Cohn passed away, and the potential threat was removed, Brahms would have immediately rushed forward with the arguments he so fervently presses now.

If true, the allegations made by Brahms would raise serious questions about the validity of his plea. Nevertheless, considering the evidence already in the record, the court does not see how he would be able to establish the truth of his assertions, even with the benefit of an evidentiary hearing. Therefore, there is no reason to burden the Government with the necessity of preparing for, and participating in, such a hearing.

### CONCLUSION

Brahms has not proffered sufficient evidence of coercion to overcome the previous record establishing that he freely pleaded guilty and waived his right to contest the warrant.[1] The court has considered his other arguments and finds them to be without merit. Accordingly, the application for a writ of error coram nobis is denied.

So ordered.

---

1. In light of the disposition of the petition on this ground, the court does not address whether Brahms' allegations concerning violation of the attorney-client privilege would, if true, be a valid basis for controverting the warrant.